UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL RUSSO,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY<br><br>　　　　　　　　Defendant. | Civil No. 3:16-00859<br><br>(Judge Kosik)<br><br>**FILED**<br>**SCRANTON**<br>NOV 0 1 2016<br>Per_____<br>DEPUTY CLERK |

## **MEMORANDUM**

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner"), denying Plaintiff Michael Russo's application for Social Security Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

## I. BACKGROUND

Russo applied for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), on September 25, 2012, alleging disability beginning October 15, 2011. (Tr. 12).[1] Russo later amended the alleged onset date to October 4, 2012. (Tr. 12). His claim was initially denied on March 22, 2013. (Tr. 12).

Russo requested a hearing before the Administrative Law Judge ("ALJ") Office of

---

[1] References to "Tr. __" are to pages of the administrative record filed by the Defendant as part of the Answer (Docs. 6, 7) on July 7, 2014.

Disability and Adjudication and Review of the Social Security Administration, and one was held on August 15, 2014 (Tr. 12). At the hearing, Russo was represented by counsel, and a Vocational Expert testified (Tr. 26-58). On October 16, 2014, the ALJ issued a decision denying Russo's application (Tr. 9-21). On December 5, 2014, Russo filed a request for review with the Appeals Council (Tr. 6-8). The Appeals Council denied Russo's request for review on April 7, 2016 (Tr. 1-5). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Russo filed a complaint in this Court on May 12, 2016 (Doc. 1). Russo also filed an application to proceed in forma pauperis (Doc. 2), which the Court granted (Doc. 3). After supporting and opposing briefs were submitted (Docs. 9, 11, 12), the appeal[2] became ripe for disposition.

Russo was born on November 24, 1964 (Tr. 19),[3] and graduated from high school (Tr. 19, 30). In the past, Russo worked as a delivery driver, categorized at the medium exertional level (Tr. 19). Russo has not engaged in substantial gainful activity since the alleged amended onset date of disability, October 4, 2012 (Tr. 14).

Russo has the following severe impairments: history of alcohol dependence, coronary artery disease, emphysema, dysthymia, and anxiety (Tr. 14).

## II. STANDARD OF REVIEW

---

[2] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

[3] At the time of Russo's alleged onset date of disability, Russo was 47 years old. Under the Social Security regulations, a person under the age of 50 is considered a "younger person." 20 CFR § 416.963(c). The Social Security Administration generally does not consider that a younger person's age will seriously affect a person's ability to adjust to other work. Id.

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id. The factual findings of the Commissioner, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 529 F.3d at 200 (3d Cir. 2008) (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)) (internal quotations and citations omitted). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The Third Circuit Court of Appeals has stated,

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986)). Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a whole. Id. (citing Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

### III. SEQUENTIAL EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. § 423(d)(2)(A)). The Commissioner follows a five-step inquiry pursuant to 20 C.F.R. § 404.1520 to determine whether the claimant is disabled. In Plummer, the Third Circuit Court of Appeals set out the five-steps:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.]1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987) . . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work.

> Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## IV. DISCUSSION

The ALJ went through each step of the sequential evaluation process and (1) found that Russo had not engaged in substantial gainful activity since October 4, 2012, the alleged amended onset date; (2) found that Russo had the severe impairments of history of alcohol dependence, coronary artery disease, emphysema, dysthymia, and anxiety; (3) found that Russo's impairments did not meet or equal a listed impairment; (4) found that Russo lacked credibility; and (5) concluded that Russo could not perform his past relevant work, but that he could perform light work with several limitations (Tr. 16-21). Specifically, the ALJ found that the light work had to be limited in "stand[ing]/walk[ing] for only 2 hours and sit[ting] for only 6 hours during an 8-hour workday." (Tr. 16). The ALJ also found that Russo "requires the use of an assistive ambulatory device in his non-dominant left upper extremity whenever standing; can only occasionally stoop, kneel, crouch, craw, and climb stairs [and] must avoid hazards such as unprotected heights and moving machinery." (Id). Finally, the ALJ found that Russo is "limited to the performance of routine repetitive work in a stable environment involving no more than

occasional changes to a routine work setting ... occasional interaction with others, no fast-paced work, no production-rate work, and no quotas." (Id).

Russo objects to the ALJ's findings at step four of the sequential evaluation process. He argues that: (1) substantial evidence does not support the ALJ's evaluation of the opinion of consulting psychologist Dr. Royer, (2) the ALJ failed to provide a clear and supported RFC, and (3) substantial evidence does not support the ALJ's credibility evaluation.

## STEP FOUR EVALUATION - RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

### i. Medical Opinions

The ALJ must consider all of the relevant evidence and give a clear explanation to support his or her findings when determining the residual functional capacity. Fargnoli, 247 F.3d at 40, 41 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." Johnson, 529 F.3d at 202 (quoting Fargnoli, 247 F.3d at 43 (quoting 20 C.F.R. § 404.1527(d)(2))) (internal quotations omitted). If a treating physician's opinion conflicts with an opinion of a non-treating physician, the ALJ may reject the treating physician's opinion " 'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429). The ALJ determines what weight to give a medical opinion by considering factors such as the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the

record as a whole, and the medical source's specialization. 20 C.F.R. § 404.1527(c)(1-5). If the ALJ discounts certain evidence, he must give some indication of the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43.

Russo's medical record demonstrates a long history of alcohol abuse (Tr. 17, 343). After a number of hospitalizations due to alcohol intoxication from May through mid-August, 2012 (Tr. 224), Russo was discharged with a diagnosis of alcohol detoxification, coronary artery disease, hypertension, hyperlipidemia and ecephalomalacia (Tr. 343). Russo was again admitted to the hospital in late August 2012 (Tr. 255), and not discharged until September 9, 2012 (Tr. 255). He was diagnosed with seizures, likely from alcohol withdrawal, coronary artery disease status post stent placement, alcohol dependence with a prior history of withdrawal seizures, hypertension, and hyperlipidemia (Tr. 255).

Dr. Zachary Simmons conducted a neurological examination of Russo on September 8, 2012, and noted that Russo appeared to have "memory difficulty with slow response time ... [and] [h]is speech appeared bradykinetic." (Tr. 245). Dr. Simmons assessed Russo's condition as being consistent with alcoholic cerebellar degeneration. (Id). On September 12, 2012, Russo underwent a psychological consultation and was diagnosed with alcohol dependency and depressive disorder NOS (Tr. 360). Also on September 12, 2012, Russo was seen by his primary care physician, Dr. Jorge Diduszyn, who noted that Russo had questionable decision making capacity (Tr. 369).

Then, on March 14, 2013, Dr. Christopher Royer, Psy.D., performed a psychological consultative examination on Russo. Dr. Royer identified Russo's symptoms as cognitive problems, difficultly sleeping, isolation, crying spells, and anxiety (Tr. 711, 712). Dr. Royer's

mental status examination of Russo was that Russo's affect was somber, and his mood was depressed and anxious (Tr. 713). Dr. Royer diagnosed Russo with alcohol dependence, in partial remission; dysthymic disorder and anxiety disorder, NOS (Tr. 713). Dr. Royer also opined that Russo had moderate difficulties in making judgments on simple work-related decisions and in his ability to interact appropriately with the public and supervisor(s) (Tr. 715). Finally, Dr. Royer opined that Russo had marked limitations in his ability to respond appropriately to changes in a routine work setting (Tr. 715).

The ALJ gave "moderate weight" to the consultative psychological examiner, Christopher Royer, Psy.D. (Tr. 18). Despite giving moderate weight to Dr. Royer's opinion, the ALJ gave "little weight" to his assessment of a marked inability to respond to changes because it "appears inconsistent with Dr. Royer's findings of grossly normal mental status and the claimant's ongoing treatment records suggesting no more than a mild-to-moderate restriction in functional activities." (Tr. 18).

Russo asserts that substantial evidence does not support the ALJ's evaluation of Dr. Royer's opinion. Russo argues that the ALJ's opinion is improperly conclusory and "cherry pick[ed]" portions of the doctor's report favorable to a position, while ignoring other parts that were non-favorable. Russo argues that if the ALJ had any doubt regarding Dr. Royer's assessment, then he should have asked for a clarification of his opinion.

"[S]ocial security proceedings are inquisitorial rather than adversarial[,]" and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Suskie v. Colvin, Civ. No. 15-573, 2016 WL 5787361, at *6 (M.D. Pa. Oct. 4, 2016) (citations omitted). The ALJ "is obliged to consider both evidence that supports, and evidence

that detracts from his ultimate finding; he cannot merely disregard evidence which does not support his conclusion." Hippensteel v. Sullivan, Civ. No. 90-155, 1990 WL 300288, at *1 (M.D. Pa. Dec. 20, 1990) (citations omitted). An ALJ cannot disregard medical opinion "based solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." Burns v. Colvin, 156 F. Supp. 3d 579, 595 (M.D. Pa. Jan. 13, 2016) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). An "ALJ may not reject a supported medical opinion based on the ALJ's lay evaluation of medical evidence." Burns, 156 F. Supp. 3d at 595.

Here, we believe that substantial evidence does not support the ALJ's evaluation of Dr. Royer's opinion. The ALJ erred in giving little weight to the medical opinion of Dr. Royer as to Russo's "marked inability to respond to changes" in a routine work setting (Tr. 18, 715). The ALJ impermissibly engaged in his own lay analysis of the medical records; specifically, when he re-interpreted the medical evidence provided by Dr. Royer by analyzing what appears to be an inconsistency with Dr. Royer's alleged findings of "grossly normal mental status." (Tr. 18). The ALJ reasoned that little weight is afforded to Dr. Royer's assessment of a marked inability to respond to changes because the opinion appears to be inconsistent with "the claimant's ongoing treatment records suggesting no more than a mild-to moderate restriction in functional activities." (Tr. 18).

We do not find that the record supports the ALJ's decision to credit a portion of Dr. Royer's opinion that seemingly supports the ALJ's decision, and in the same breath, discounts the same doctor's opinion that is contrary to the ALJ's decision. This is true, especially when Russo's treating physician calls into question Russo's decision making capacity (Tr. 369) and

ability to work given his various medical conditions (Tr. 822). It does not appear from the ALJ decision that he assigned any weight to Russo's treating physician's opinions, despite a treating physician's opinion being entitled to controlling weight. Johnson, 529 F.3d at 202. Furthermore, if the ALJ believed Dr. Royer's opinion to be inconsistent with itself, rather than engage in his own lay analysis, he should have requested a clarification as to the mental health limitations opined by Dr. Royer. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (stating that the ALJ's obligation to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). This approach would have been consistent with the ALJ's duty to investigate the facts and develop the record, and such a clarification may have produced the substantial evidence needed to support the ALJ's decision.

### ii. *Credibility of Claimant*

The ALJ found that Russo's statements concerning the intensity, persistence and limiting effects of his mental health symptoms were not entirely credible "due to the claimant's description of daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 19). The ALJ reasoned that because Russo "retains the capacity to perform personal care activities, prepare his own meals, wash dishes, shop in stores, and manage money ... [he] demonstrate[es] a greater capacity for sustained physical, cognitive, and social skills than alleged." (Id). The ALJ concluded that these are "suggestive of an individual capable of performing work activity on a sustained basis within the above residual functional capacity." (Id). Russo argues that these limited activities are not inconsistent with his assertion that he cannot perform sustained work activities, 8 hours a day, 5

days a week.

We agree with Russo. These asserted activities of daily living do not provide substantial evidence. In <u>Burns v. Colvin</u>, the court found claimant's ability to: attend to his own personal care, watch television, do housework, go for a walk, prepare meals on a daily basis requiring 30 minutes of preparation per meal, clean the house, sweep, mop, engage in yard work, walk or drive on a daily basis, travel independently, shop in stores, watch television, do crossword puzzles, and play card games on a daily basis, are not indicative of the claimants's ability to "work on a regular and continuing basis, eight-hours a day, five days a week." <u>Burns</u>, 156 F. Supp. 3d at 597; <u>see also</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 44 (3d Cir. 2001) ("Fargonoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity"); <u>Smith v. Califano</u>, 637 F.2d 968, 971-72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity ... It is well established that sporadic or transitory activity does not disprove disability.").

## V. CONCLUSION

Given the foregoing, we find that substantial evidence does not support the ALJ's assessment. We will vacate the Commissioner of Social Security's decision and remand this case. We will decline to address Russo's other allegations of error, as remand may produce different results on these claims, making discussion of them moot. <u>Burns</u>, 156 F. Supp. 3d at 598; <u>see</u> <u>LaSalle v. Comm'r of Soc. Sec.</u>, Civ. No. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011). An appropriate order follows.